---

**SO ORDERED,**



*[signature]*

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

**IN RE: RICHARD YOUNG[1]**                              **CASE NO.: 17-14065-SDM**

**DEBTOR**                                                        **CHAPTER 11**

## OPINION ON MOTION TO APPROVE COMPROMISE AND SETTLEMENT REGARDING TRUSTEE'S TRANSFER CLAIMS (DKT. #589)

THIS CAUSE comes before the Court on the *Motion to Approve Compromise and Settlement Regarding Trustee's Transfer Claims* (the "Application")(Dkt. #589[2]) filed by the Chapter 11 Trustee and the *Objections* to that Motion filed by Creditors Helena Chemical Company ("Helena")(Dkt. #608) and Guaranty Bank and Trust Company ("Guaranty Bank")(Dkt. #609). On January 14, 2021, the Court conducted a telephonic hearing before taking the matter under advisement. On March 31, 2021, the Court entered an Order Granting the Chapter 11

---

[1] On November 19, 2018, this Court entered an Order (Dkt. #202) substantively consolidating the cases of Richard Young (Case No. 17-14065), RTR Farms, Inc. (Case No. 17-14067), and Double Y Farms, Inc. (Case No. 18-10168).

[2] References to court documents entered in the lead case of Richard Young (Case No. 17-14065) will be denoted as Dkt. #*XX*. References to any to court documents filed in any adversary proceedings will be denoted in the following format: AP Dkt. #*XX*. References to Proofs of Claim filed in the lead case will be denoted as POC #*XX*.

Trustee's Motion (Dkt. #627). This Opinion provides the findings of fact and conclusions of law supporting the Court's previous ruling.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A)[3](matters concerning the administration of the estate) and (O)(other proceedings affecting the liquidation of assets of the estate).

## II. FACTS AND PROCEDURAL HISTORY

As all the parties are aware, this bankruptcy case has several moving parts. In addition to the lead case of Richard Young (the "Debtor") in which the Chapter 11 Trustee's Motion is pending, there are several adversary proceedings currently pending before this Court. Namely, and the most relevant for the Motion before the Court, are the Chapter 11 Trustee's adversary proceedings against the Debtor's father, Ricky Young ("Ricky"), and two farming entities—Dixie Place Farms and Young Farms, Inc. (Adv. Pro. No. 20-01060, the "Ricky Young AP") and against the Debtor's wife, Suzie Young ("Suzie"), and her farming entity, Que Farms, LLC (Adv. Pro. No. 20-01061, the "Suzie Young AP").[4]

In the Ricky Young AP, the Chapter 11 Trustee asserted claims including preference, fraudulent transfer, postpetition transfer, and turnover. Specifically, the claims concerned a condo in Arkansas, a $90,000.00 transfer or payment to Dixie Place Farms, a $150,000.00 payment or

---

[3]Except where stated otherwise, all subsequent statutory references are to Title 11 of the U.S. Code.

[4] Guaranty Bank also has a dischargeability adversary proceeding pending (Adv. Pro. No. 18-01020) as does Helena (Adv. Pro. No. 18-01017).

transfer through an entity, Noonan, Inc. (allegedly a "racing company"), for the benefit of Ricky, Dixie Place Farms, or Young Farms, Inc for a racing engine, a $13,750.00 payment or transfer to Dixie Place Farms, a $60,000.00 payment or transfer to Ricky, and $37,767.00 payment or transfer for two hunting trips.

Similarly, in the Suzie Young AP, the Chapter 11 Trustee asserted claims including fraudulent transfer, postpetition transfer, civil conspiracy and fraud, and punitive damages. The property relating to those claims include a pontoon boat, Island 66 membership and cabin with an estimated value of around $336,000.00, transfer of soybean contracts and funds including crop insurance for at least 136,000 bushels of soybeans with an estimated value of around $500,000.00, a $70,000.00 payment or transfer to Que Farms, a $53,000.00 car purchase, and $108,000.00 payment for rent by an unrelated entity. The Application currently pending before the Court seeks to approve the settlement and resolution for both of the Chapter 11 Trustee's pending adversary proceedings.

## III. DISCUSSION

In his Motion, the Chapter 11 Trustee proposes the following resolution to the claims above:

(1) The Debtor and his father, Ricky Young, will execute a $1,000,000.00 joint promissory note (the "Promissory Note") in favor of the Chapter 11 Trustee, Kenneth H. Lefoldt with a 3% interest rate to begin accruing retroactively on January 1, 2021. The Debtor's wife, Suzie Young, would execute a limited guaranty of this promissory note.

(2) The Promissory Note calls for an initial payment in the amount of $200,000.00 with an additional four payments of $200,000.00 plus accrued interest on such dates as set forth in Chapter 11 Trustee's Motion on page 5, paragraph 13(b).

(3) The Promissory Note would be secured by collateral: (a) Island 66 Property; (b) Pickwick Lake House; (c) Pontoon Boat and Trailer; and (d) 41 Acres of Farm Land valued at $300,000.00; and (e) a $200,000.00 escrow deposit.

(4) The parties would execute and provide to the Chapter 11 Trustee a Deed of Trust for the real property granting a first priority lien to the Chapter 11 Trustee.

(5) Title to the pontoon boat and trailer would be turned over to the Trustee.

(6) Any of the collateral for the Promissory Note can be marketed and sold by the Debtor or his wife, subject to the Chapter 11 Trustee's approval. Any net proceeds from the sale of the collateral would be applied to interest and then principal.

(7) The sale proceeds of any collateral would be applied and counted towards the $200,000.00 payments required under the Promissory Note and therefore satisfying the Promissory Note in advance of the payment schedule.

(8) The proposed settlement does not affect the rights of any Creditor to object to dischargeability of their claims.

(9) If the Court approves the settlement, the Chapter 11 Trustee's adversary proceedings would be held in abeyance or stayed pending the receipt of all payments required under the Promissory Note.

(10) On completion of all payments required under the Promissory Note, all parties subject to the adversary proceedings would execute a mutual release and both adversary proceedings would be dismissed.

(11) The Chapter 11 Trustee's Plan of Liquidation includes a discharge under 11

U.S.C. § 1141, but whether the Debtor ultimately receives a discharge does not void

the settlement.

*See* the Motion (Dkt. #589).

Based on the terms above, the Chapter 11 Trustee argues that the proposed settlement is fair and reasonable and in the best interest of the bankruptcy estate. Specifically, the Chapter 11 Trustee avers that further litigation would be very costly and the potential to recover funds even after obtaining judgments is never certain. At the hearing on January 14, 2021, the Chapter 11 Trustee testified that if the litigation in the Ricky Young AP were to be successful and a judgment obtained, the judgment would consist of a $350,000.00 award and a half interest in the Arkansas condo. If the Suzie Young AP were to result in a successful judgment, the Chapter 11 Trustee asserts the amount of the judgment would be around $730,000.00. Both judgments combined would be around $1,000,000.00, or the amount of the proposed settlement.

The Chapter 11 Trustee also testified that he believes the proposed $1,000.000.00 settlement is fair after looking at the status of current assets and facts surrounding the case. Most importantly, the Chapter 11 Trustee identified several key reasons for the settlement terms. First, the Promissory Note obligates the Debtor's father, Ricky, for the full $1,000,000.00 in the event of a default. In other words, requiring Ricky to be a co-obligor on the Promissory Note would "increase the likelihood of recovery". Second, based on the terms of the Promissory Note, timely payments by the co-obligors would result in recoupment of $1,000,000.00 in just a one-year time frame. Rather than face the uncertainty of recovery and potentially lengthy litigation, the Chapter 11 Trustee argues that the bankruptcy estate would immediately benefit with the initial $200,000.00 payment and the remaining payments within one year. The Chapter 11 Trustee also

posits that the 41 acres of farmland included as collateral in the Promissory Note is not property of the bankruptcy estate and would be excluded as a form of recovery in the event of successful judgments in his pending adversary proceedings. Further, in the event of a default under the Promissory Note, the Trustee has multiple avenues available to him, which include the continued prosecution of both adversary proceedings. Last, the Chapter 11 Trustee noted that the settlement does not affect any Creditors' ability to pursue their nondischargeability adversary proceedings.

Creditors Guaranty Bank and Helena disagree on almost every aspect of the proposed settlement. Helena argues that most of the pledged collateral in the Promissory Note (at least the Pickwick lake house, the Island 66 property[5], and pontoon boat and trailer) is already property of the bankruptcy estate, and the Debtor or his wife, Suzie, should not get credit for property already subject to potential liquidation. Helena asserts that Suzie is receiving too favorable treatment under the terms of the Promissory Note. According to Helena, Suzie should be required to fully guarantee the Promissory Note like the Debtor and Ricky. Finally, Helena believes that Suzie could have received at least $600,000.00 in proceeds from a postpetition transfer relating to the output from a soybean crop, and the Chapter 11 Trustee has not fully accounted for that transfer in his settlement.

Guaranty Bank raises the same concerns concerning the collateral securing the Promissory Note and Suzie's role as a limited guarantor. Guaranty also argues that the valuations of collateral in the Motion (the Island 66 membership and cabin and 41 acres of farmland) are not based on any appraisals but were given to the Chapter 11 Trustee by the Debtor and his family. To Guaranty

---

[5] Helena argued in their Objection and at the hearing that ownership of the Island 66 property and stock may not have been transferred and is still owned by the Debtor.

Bank, the Debtor has essentially been able to transfer his entire farming operation to his wife, Suzie, and other "alter egos" or related farming entities and faced no consequences.[6]

At the hearing, both Helena and Guaranty Bank questioned the Chapter 11 Trustee over how he arrived at the terms of the settlement and some of their concerns merit some discussion. Specifically, in response to questioning by the Creditors as to valuation of particular property, the Chapter 11 Trustee admitted that while he estimated the value of the proceeds from the sale of the 136,000 bushels of soybeans to be around $500,000.00, he did not know for certain the exact amount received from the sale of those soybeans. Guaranty Bank asserted in its questioning that the sale of the soybean crop could have been anywhere from $8 to $10 per bushel, resulting in over $1,000,000.00 in sale proceeds. Guaranty Bank also questioned the Chapter 11 Trustee about whether he was aware Suzie used those proceeds to purchase a substantial amount of farming equipment, and while the Chapter 11 Trustee responded he was aware that some proceeds could have been used to purchase farm equipment, he was unaware of the value of the equipment.

This Court is not the first to be faced with the task of approving a settlement reached by a trustee, and other courts that have addressed the issue provide the appropriate legal standards. Federal Rule of Bankruptcy Procedure 9019 provides that by motion from the trustee and after notice and a hearing, "the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). As the Chapter 11 Trustee correctly pled, and under Fifth Circuit precedent, courts may approve compromises and settlements that are "fair and equitable and in the best interest of the estate." *In re Osborn*, 2018 WL 2754488 at *4 (Bankr. S.D. Miss. June 6, 2018)(quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 & n.2

---

[6] The Court notes that it does not take the Creditors' allegations lightly. The Court is also aware that Suzie has not responded to the Complaint in the Suzie Young AP, which means no discovery has taken place, including Suzie's deposition.

(5th Cir. 1995). To determine whether a compromise or settlement is "fair and equitable" and in the "best interests of the estate", courts should consider the following factors: (1) the probability of success in litigating the adversary claim; (2) the complexity and likely duration of litigation; and (3) all other factors bearing on the wisdom of the compromise. *In re Heritage Real Estate Investment, Inc.*, 2020 WL 8551776, at *8 (Bankr. S.D. Miss. Sept. 9, 2020) (quoting *Official Comm. Of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997). In evaluating the third factor "wisdom of compromise", courts should also consider hese two additional factors: (a) "the best interest of the creditors, with proper deference to their reasonable views"; and (b) "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.*

The bankruptcy court need not conduct a "mini-trial to determine the probable outcome of any claims waived in the settlement" but simply "apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent decision." *Id.* at *9. Further, the trustee bears the burden of establishing the settlement or compromise meets the requisite standard, but that burden is not high—the trustee need only show that "his decision falls within the range of reasonable litigation alternatives." *Id.* (quoting *In re Roqumore,* 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008). As a general rule, to minimize litigation and expedite the administration of a bankruptcy estate, "[c]ompromises are favored in bankruptcy." *Id.* at *8 (quoting 10 COLLIER ON BANKRUPTCY ¶ 9019.01 (16th ed. 2019).

Armed with the appropriate legal standard and factors, the Court will briefly address each factor. As to the (1) probability of success in litigating the "transfer" claims and the (2) complexity, expense, and likely duration of the "transfer" claims in the Ricky Young AP and Suzie Young AP, the Chapter 11 Trustee is the only party to sufficiently address these two factors. In his testimony,

the Chapter 11 Trustee stated that he originally assessed the maximum recovery value between his

two adversary proceedings somewhere around $1,600,000.00. That figure, however, is not the

proposed settlement amount for several reasons. First, the Chapter 11 Trustee testified that the

Debtor's equipment, with an estimated value of around $332,000.00, had already been "foreclosed

on" by many of the Creditors in the case. Second, the Debtor's receivables (estimated at

$340,000.00) were not likely to be recovered based on intercompany transactions and possibly

statute of limitations defenses.

So even if litigation would lead to judgments in both the Ricky Young AP and the Suzie

Young AP, based on the Chapter 11 Trustee's estimation, the judgments would be somewhere in

the range of the negotiated $1,000,000.00 settlement amount. Further, the Chapter 11 Trustee

testified that even if this Court awards judgments in his favor, those judgments do not equate to a

certain monetary recovery for the bankruptcy estate. The Court believes that while the Debtor,

Suzie, and their farming entities may very well be found liable for the alleged conduct, the Chapter

11 Trustee has adequately accounted for that conduct in the proposed settlement based on the

circumstances and the Debtor's known assets or potential assets of the bankruptcy estate.

As to the second factor, if the Ricky Young AP and Suzie Young AP were to go forward,

the Chapter 11 Trustee would likely expend significant amount of time in litigation and incur

substantial costs, while potentially not prevailing on every issue. Further, just looking to the other

pending adversary proceedings brought by the Creditors Guaranty Bank and Helena (which have

been pending for almost three years), the Chapter 11 Trustee's adversary proceedings may very

well take years before judgments are entered and collection attempts begin. For the bankruptcy

estate, the proposed settlement means monetary recovery upfront and in a reasonable timeframe.[7]

Both of the first two factors weigh in favor of approving the proposed settlement.

The Court now turns its attention to the third factor most relevant to the Creditors and their

objections to the proposed settlement: (3) other relevant factors bearing on the wisdom of the

settlement. As stated above, the Court will consider the Creditors' best interest and whether the

proposed settlement was procured by fraud or collusion. To begin, no evidence presented at the

hearing suggests that the parties arrived at the proposed settlement through fraud or collusion.

Further, most (if not all) of the parties were represented by counsel. As to whether the proposed

settlement is in the best interest of the Creditors, the Court finds that while the Creditors do raise

valuation issues concerning some of the property involved in the Ricky Young AP and the Suzie

Young AP, the Court finds that the "you should've gotten more" argument does not hold up.

As the Chapter 11 Trustee testified at the hearing, if he believed a settlement could have

been reached in the amount of $2,000,000.00, that would have been the proposed settlement

amount. Compromise, however, is the main component to settlement. The Court certainly

understands the Creditors' arguments that the proceeds from the sale of the soybean bushels *could*

have amounted to more than the Chapter 11 Trustee's estimation. But that, in and of itself, is not

a reason to deny the proposed settlement. The Chapter 11 Trustee testified that he did account for

that postpetition transfer in his settlement negotiations. This factor is at least neutral in whether to

approve or deny the settlement proposal.

---

[7] The Court is aware of the Chapter 11 Trustee's recent *Motion for Authority to Sell Assets Free and Clear of Liens, Interest, Encumbrances and Claims – Island 66* (Dkt. #623) in which the Chapter 11 Trustee is seeking to liquidate the Island 66 membership and cabin and recoup proceeds for the benefit of the bankruptcy estate. Now that the Court has granted the Trustee's instant Motion, the sale proceeds of this property will be applied as a credit reducing the $1,000,000.00 Promissory Note.

The Court also would like to point out several facts that further support its decision. First, and most important to the Court, any resolution in the Ricky Young AP and Suzy Young AP do not preclude both Helena and Guaranty Bank from proceeding with their dischargeability adversary proceedings. Second, the Chapter 11 Trustee testified that if he proceeded in the Ricky Young AP, the most Ricky could be found liable for is $350,000.00. With this settlement, the Debtor's father is now obligated on the entirety of the Promissory Note. As mentioned above and along the same lines, the Chapter 11 Trustee was able to secure 41 acres of farmland as additional collateral under the Promissory Note that would not have been available to him if he pursued the adversary proceedings to judgment. Last, and as to Suzie, the Court understands that while she may have only signed a limited guaranty under the Promissory Note, she is still obligated in the event a balance remains on the Promissory Note.

## IV. CONCLUSION

In conclusion, despite the Chapter 11 Trustee's uncertainty regarding the exact amount of proceeds from the sale of the soybean bushels, or what equipment the proceeds were used to purchase, the Court finds that after considering the relevant factors, the Chapter 11 Trustee has met his burden that the proposed settlement is fair and reasonable and in the best interest of the bankruptcy estate. Therefore, the Court granted the Chapter 11 Trustee's *Motion to Approve Compromise and Settlement Regarding Trustee's Transfer Claims* (Dkt. #589) by its Order (Dkt. #627) on March 31, 2021.